ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **WANDA FERNANDINI LAMBOY**<br>DEMANDANTE(S)-APELADA(S)<br><br>V.<br><br>**PUERTO RICO ONE ALUMINUM, MFG CORP.**<br>DEMANDADA(S)-APELANTE(S) | **KLAN202400651** | *APELACIÓN*<br>procedente del Tribunal de Primera Instancia, Sala Superior de **BAYAMÓN**<br><br>Caso Núm.<br>**BY2018CV02298** (502)<br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y el Juez Campos Pérez[1]

*Barresi Ramos*, juez ponente

## S E N T E N C I A

En San Juan, Puerto Rico, hoy día 13 de mayo de 2026.

Comparece ante este Tribunal de Apelaciones, **PUERTO RICO ONE ALUMINUM MFG CORP.** (**PUERTO RICO ONE**) mediante *Apelación* encausada el 8 de julio de 2024. En su escrito, nos solicita que revisemos la *Sentencia Enmendada* decidida el 13 de mayo de 2024 por el Tribunal de Primera Instancia (TPI), Sala Superior de Bayamón.[2] En dicha decisión, el foro *a quo* enmendó la *Sentencia* decretada el 25 de noviembre de 2022 a los efectos de requerirle a **PUERTO RICO ONE** pagar la suma total de $67,758.56 por concepto de los daños sufridos por negligencia a favor de la señora **WANDA FERNANDINI LAMBOY** (señora **FERNANDINI LAMBOY**). Este importe se desglosó de la siguiente manera: (a) $13,810.02 por daños materiales; (b) $13,188.00 por concepto de intereses del préstamo con SBA; y (c) $40,540.54 por angustias

---

[1] En virtud de la *Orden Administrativa OATA-2025-019* de 10 de febrero de 2025 se designó al Juez José I. Campos Pérez para sustituir a la Jueza Camille Rivera Pérez quien cesó sus funciones en el Tribunal de Apelaciones.

[2] Este dictamen judicial fue notificado y archivado en autos el 15 de mayo de 2024. Apéndice de la *Apelación*, págs. 638-644.

mentales y daños morales. Además, le impuso el pago de costas y del interés legal aplicable.

Exponemos el trasfondo fáctico y procesal que acompañan a la presente controversia.

**- I -**

El 9 de julio de 2016, la señora **FERNANDINI LAMBOY** suscribió un contrato con **PUERTO RICO ONE** mediante el cual acordaron la fabricación e instalación de diez (10) ventanas de seguridad; dos (2) ventanas de cristal; una (1) puerta principal; y una (1) puerta corrediza. El precio pactado por la fabricación e instalación fue de $5,774.00. Así las cosas, al momento de la instalación, surgieron varios imprevistos que dilataron la conclusión del trabajo acordado.

A continuación, el 23 de noviembre de 2016, la señora **FERNANDINI LAMBOY** presentó la *Querella,* número BAY-2016-0000040, ante el Departamento de Asuntos del Consumidor (DACo) al amparo de la Ley Núm. 5 de 23 de abril de 1973.[3] El 26 de abril de 2017, se presentó el *Informe de Inspección Generales*, el cual arrojó los siguientes hallazgos:

1) Puerta de entrada principal no fue entregada.
2) La "sliding door" del balcón, la cual tiene instaladas dos ventanas a sus laterales, muestra defectos en su instalación en la forma de "gaps" de aproximadamente ½ pulgada entre el techo y borde superior del marco de la puerta. Falta por cubrir con "corking" la parte superior de las ventanas. A la cerradura le faltan las terminaciones. Existe un espacio de aproximadamente ½ pulgada en el borde inferior de las mochetas.
3) Las ventanas de la sala muestran descuadre, falta de terminaciones en las mochetas laterales y mocheta inferior.
4) El cuarto dormitorio núm. 2 muestra las ventanas con dificultad para abrir y cerrar. Las mismas carecen de tornillos de agarre y/o anclaje.
5) El cuarto dormitorio principal muestra las cuatro ventanas con dificultad para abrir y cerrar, tres lamas defectuosas, rotura en la mocheta exterior de aproximadamente tres pies de largo y falta de terminaciones.
6) Las ventanas de ambos baños muestran dificultad para abrir y cerrar, al igual que falta de terminaciones.[4]

---

[3] Ley Núm. 5 de 23 de abril de 1973, según enmendada, conocida como la *"Ley Orgánica del Departamento de Asuntos del Consumidor"*. 3 LPRA § 341. La señora **FERNANDINI LAMBOY** enmendó su *Querella* en dos (2) ocasiones, a saber: el 22 de mayo de 2017 y el 9 de junio de 2017, respectivamente.
[4] Apéndice de la *Apelación*, págs. 389-391.

Posteriormente, el 1 de febrero de 2018, el DACo celebró una audiencia adjudicativa con el beneficio de la comparecencia de ambas partes y sus respectivas representaciones legales. Tiempo después, el 18 de mayo de 2018, DACo decretó *Resolución* declarando ha lugar la *Querella* incoada por la señora **FERNANDINI LAMBOY**.[5] Concluyó, en síntesis, que la instalación de las ventanas fue defectuosa y tampoco fue culminada, según lo pactado, y tal incumplimiento le ocasionó daños. Por eso, le impuso a **PUERTO RICO ONE** reintegrar $6,438.01 en o antes del término perentorio de treinta (30) días.

Más adelante, el 31 de agosto de 2018, la señora **FERNANDINI LAMBOY** interpuso *Demanda* sobre daños y perjuicios.[6] En esencia, apuntaló que, como consecuencia directa de la instalación defectuosa de las ventanas, el interior de su apartamento sufrió daños a raíz de las lluvias y el viento que impactaron su apartamento durante el huracán María. Aseguró que hubo desidia en la instalación de las ventanas al dejar huecos por los cuales se coló la lluvia al interior de su vivienda. El 22 de octubre de 2018, **PUERTO RICO ONE** presentó su *Contestación a la Demanda* conteniendo sus defensas afirmativas[7] El mismo día, **PUERTO RICO ONE** presentó *Solicitud de Desestimación Bajo la Doctrina de Cosa Juzgada y la Derivada Doctrina de Impedimento Colateral por Sentencia*.[8] Sostuvo que la *Demanda* no exponía una reclamación que oportunamente ameritara la concesión de un remedio en derecho, toda vez que se fundamentaba en alegaciones conclusorias y frívolas. El 14 de noviembre de 2018, la señora **FERNANDINI LAMBOY** presentó su *Moción en Oposición a Solicitud de Desestimación*.[9] El 14 de noviembre de 2018, se emitió *Resolución* declarando no ha lugar la petición de desestimación presentado por **PUERTO RICO ONE**.[10]

---

[5] Este dictamen administrativo fue notificado y archivado en autos el 21 de mayo de 2018. Apéndice de la *Apelación*, págs. 35-47.
[6] *Íd.*, págs. 1-3.
[7] *Íd.*, págs. 15-18.
[8] Apéndice de la *Apelación*, págs. 25-47.
[9] *Íd.*, págs. 49-50.
[10] *Íd.*, págs. 52 y 57.

Luego de varios incidentes procesales, el juicio fue celebrado los días 12 y 13 de julio de 2021. La señora **FERNANDINI LAMBOY** atestiguó y presentó el(los) testimonio(s) de la(s) siguiente(s) persona(s): Iván J. Baigés Rodríguez (perito). **PUERTO RICO ONE** presentó el(los) testimonio(s) de la(s) siguiente(s) persona(s): Nelly Rodríguez Suárez y Doel Banchs Zayas (perito ajustador). Incluimos un resumen de algunas de las declaraciones ofrecidas en el juicio ante el Tribunal de Primera Instancia:

### Wanda Fernandini Lamboy

Expuso que es retirada del Departamento de Agricultura, Administración de Servicios y Desarrollo Agropecuario; llevaba veinticuatro (24) años viviendo en su residencia en Bayamón, y era la dueña del apartamento ubicado en un *walkup*, en un tercer piso.[11] Indicó que conoce la compañía **PUERTO RICO ONE ALUMINUM**, pues hizo un contrato con ellos para un trabajo de instalación de puertas y ventanas en su apartamento; y el mismo fue deficiente.[12] Amplió que, por tal razón, acudió a DACo en noviembre del año 2016, para incoar una Querella; como parte del proceso se citó a un inspector para inspeccionar el trabajo realizado; y el resultado de la Querella fue a su favor y le pagaron aproximadamente $6,000.00 por los daños.[13] Atestó que la razón por la cual contrató los servicios de la compañía fue porque se había celebrado una asamblea en el condominio con el fin de que se cambiaran todas las ventanas de los apartamentos.[14] Expresó que luego del paso del huracán María, llegó al complejo y se percató de que las ventanas en su apartamento no estaban y era el único en esas condiciones.[15] Fueron admitidas como *Exhibits* varias fotografías del apartamento de la señora **FERNANDINI LAMBOY**.[16] Exteriorizó que al no haber ventanas entraba el agua por todos lados y sus pertenencias fueron afectadas.[17] Detalló que realizó una gestión con la compañía aseguradora del condominio para solicitar el seguro, pero que se lo negaron por los daños no haber llegado al 2%.[18] Puntualizó que, tras la denegatoria del seguro del condominio, acudió a FEMA a solicitar la ayuda y está también le fue denegada.[19] Precisó que posteriormente solicitó el préstamo SBA y le aprobaron $24,600.00; tuvo que devolver

---

[11] Transcripción de la Prueba Oral (TPO) de la audiencia celebrada el 12 de julio de 2021, pág. 14, línea 24; pág. 15, líneas 1-5, 8-16; pág. 17, líneas 1, 16-21; pág. 18, líneas 10-22.

[12] *Íd.*, pág. 19, líneas 3-8.

[13] *Íd.*, pág. 19, líneas 10-24; pág. 20, líneas 1-8; pág. 21, líneas 12-19; pág. 173, líneas 12-24; pág. 174, líneas 9-22; pág. 175, líneas 1-12.

[14] *Íd.*, pág. 22, líneas 10-24.

[15] Transcripción de la Prueba Oral (TPO) de la audiencia celebrada el 12 de julio de 2021, pág. 30, líneas 6-23; pág. 31, líneas 1-4.

[16] *Íd.*, págs. 32-39, 43-55 (fotografías sobre el apartamento y los muebles que fueron afectados por el agua).

[17] *Íd.*, pág. 44, líneas 18-19; pág. 45, líneas 8-11; pág. 47, líneas 2-3, 22-24; pág. 48, líneas 23-24; pág. 49, líneas 18-20; pág. 51, líneas 10-13; pág. 55, líneas 2-4.

[18] *Íd.*, pág. 57, líneas 16-21; pág. 58, líneas 16-23; pág. 59, líneas 12-24; pág. 60, líneas 1-3; pág. 61, líneas 2-8, 10-18; pág. 167, líneas 10-17.

[19] Transcripción de la Prueba Oral (TPO) de la audiencia celebrada el 12 de julio de 2021, pág. 61, líneas 17-18; pág. 62, líneas 1-9; pág. 68, líneas 3-8. En desacuerdo, la señora **FERNANDINI LAMBOY** apeló la determinación de FEMA y la misma le fue denegada. Véase, además, pág. 69, líneas 17-20; pág. 70, líneas 8-16; pág. 71, líneas 19-24; pág. 168, líneas 3-24; pág. 172, líneas 3-15.

$3,400.00 por habérsele desembolsado en exceso; y, paga mensualmente $117.00 por un término de treinta (30) años.[20] Se presentaron los recibos de los gastos incurridos por la señora **FERNANDINI LAMBOY**.[21] Relató que adquirió unas puertas nuevas de aluminio para los cuartos porque se habían mojado, pues se habían expandido y unos "escrines" pues también habían sufrido daños.[22] Mencionó que instaló ventanas y puertas nuevas con una compañía diferente, en sustitución al trabajo que le había realizado **PUERTO RICO ONE**.[23] Narró que como consecuencia de la situación, que fue una que le trastocó su vida emocionalmente, estuvo bastantes años para poder remodelarlo; no podía ir al apartamento, pues era un cuarto cerrado sin iluminación, no tenía ventilación; solo iba a pernoctar y pasaba las noches llorando.[24] Reseñó que buscó ayuda psiquiátrica; tuvo una hospitalización parcial en la cual tomaba talleres y regresaba a su casa; y estaba tomando medicamentos.[25] La primera visita fue un año y medio o dos años aproximadamente con anterioridad a la fecha de la audiencia.[26] Concretó que inicialmente acudió una sola vez a donde el Dr. Palou, pero que no le gustó y luego de uno o dos años se atendió con el Dr. Prieto, en el año 2018.[27] Particularizó que tuvo aproximadamente de veintiocho (28) a treinta y nueve (39) terapias.[28] Explicó que acudió un año después del huracán María pues comenzó a sentir que la situación le estaba afectando y sus primas le recomendaron que buscara ayuda profesional.[29] Enfatizó que se sentía deprimida, llorando, no podía dormir, no podía visitar su apartamento pues lloraba; y, la causa de ello fue la situación de las ventanas que estaban mal puestas y luego el huracán María.[30] Aclaró que se quedó dos meses en casa de su prima, y todos los días iba al apartamento para arreglarlo y limpiarlo.[31]

Durante el contrainterrogatorio, se le cuestionó si tenía conocimiento de que venía un huracán a Puerto Rico, a lo que respondió en la afirmativa.[32] Manifestó que contrató para dieciséis (16) ventanas; le fueron entregadas; de esas dieciséis (16), cuatro (4) fueron las que el huracán se llevó; mas no tomó foto de las

---

[20] Transcripción de la Prueba Oral (TPO) de la audiencia celebrada el 12 de julio de 2021, pág. 72, líneas 3-23; pág. 78, línea 15-16; pág. 202, líneas 4-10.

[21] *Íd.*, pág. 79, líneas 20-24; pág. 81, líneas 20-24; pág. 82, líneas 1-10; pág. 83, líneas 4-10, 19-24; pág. 84, líneas 12-17; pág. 89, líneas 5-22; pág. 90, líneas 16-21; pág. 91, líneas 21-24; pág. 92, líneas 8-11, 24; pág. 93, líneas 2-3, 20-23; pág. 94, líneas 1-4, 19-20; pág. 95, líneas 15-22; pág. 97, líneas 4-14, 22-23; pág. 98, línea 2; pág. 99, líneas 11-18; pág. 100, líneas 4-9; pág. 101, líneas 12-24; pág. 102, líneas 1-2,21-23; pág. 104, líneas 4-8; pág. 105, líneas 5-13; pág. 106, líneas 4-11; pág. 107, líneas 4-10; pág. 108, líneas 7-13; pág. 109, líneas 9-23; pág. 110, línea 4; pág. 111, líneas 2-12; pág. 112, líneas 9-16, 23-24; pág. 113, líneas 2, 9-12, 23-24; pág. 114, líneas 2-11; pág. 115, líneas 5-16; pág. 116, líneas 11-19; pág. 117, líneas 11-17; pág. 118, líneas 9-17; pág. 119, líneas 11-18; pág. 120, línea 11; pág. 121, líneas 2-8; pág. 122, líneas 7-14; pág. 123, líneas 9-15; pág. 124, líneas 14-19; pág. 125, líneas 16-18; pág. 126, líneas 12-17; pág. 128, líneas 17-24; pág. 129, líneas 1-2. Las páginas corresponden a los recibos de los pagos realizados por la señora **FERNANDINI LAMBOY,** que fueron admitidos como *Exhibits*.

[22] Transcripción de la Prueba Oral (TPO) de la audiencia celebrada el 12 de julio de 2021, pág. 127, líneas 9-22; pág. 130, líneas 1-10

[23] *Íd.*, pág. 131, líneas 4-13; pág. 132, líneas 4-13; pág. 133, líneas 12-13.

[24] *Íd.*, pág. 133, líneas 20-24; pág. 134, líneas 1-18.

[25] *Íd.*, pág. 134, líneas 19-24; pág. 135, líneas 1-13.

[26] Transcripción de la Prueba Oral (TPO) de la audiencia celebrada el 12 de julio de 2021, pág. 136, líneas 8-19; pág. 137, línea 4.

[27] *Íd.*, pág. 156, líneas 3-21.

[28] *Íd.*, pág. 156, líneas 22-24; pág. 157, líneas 1-6.

[29] *Íd.*, pág. 157, líneas 9-24.

[30] Transcripción de la Prueba Oral (TPO) de la audiencia celebrada el 12 de julio de 2021, pág. 158, líneas 1-13; pág. 159, líneas 16-24.

[31] *Íd.*, pág. 159, líneas 8-12.

[32] *Íd.*, pág. 179, líneas 18-24.

mismas.[33] Contestó que las demás ventanas no sufrieron daño alguno y se quedaron fijas pero que aun así entró agua.[34] Informó que no se quedó a dormir en el apartamento para el huracán María porque "no estaba segura" al haber un trabajo mal hecho y en peligro de que pudiera ocurrir una situación como la ocurrida.[35] Reconoció que acudió a buscar ayuda profesional un año luego del huracán María y de la entrevista inicial surgía que era por un caso legal en DACo.[36]

### Iván J. Baigés Valentín

Acreditó que es catedrático de la Universidad de Puerto Rico, Recinto de Mayagüez, de la Facultad de ingeniería, y tiene una práctica de peritaje y consultoría.[37] Explicó que para aceptar una encomienda de peritaje verifica si hay evidencia física de los hechos, inspecciona el área aunque las condiciones hayan cambiado, hace un análisis de lo ocurrido, como se construyó, lo que se fabricó y si lo que se propuso tiene alguna inherencia.[38] Confirmó que realizó un informe pericial el 29 de noviembre de 2019 y contenía la información sobre la inspección que realizó al apartamento de la señora FERNANDINI LAMBOY, se tomaron fotografías y conversó con ésta.[39] Examinó las fotografías suministradas por la señora FERNANDINI LAMBOY y los códigos de construcción aplicables.[40] Atestiguó que en el informe concluyó que las ventanas estuvieron expuestas a vientos que estaban dentro del límite de viento máximo de diseño, por lo que debieron haber resistido sin fallar.[41] Añadió que otra de las conclusiones en el informe era que el trabajo de las ventanas instaladas por PUERTO RICO ONE ALUMINUM fue uno defectuoso ya que falló en comportarse de forma tan segura que un usuario ordinario le daría al usar el producto para el uso para el cual es destinado o para el cual podría ser usado.[42]

En el contrainterrogatorio, destacó que su informe se realizó dos años posterior al huracán María y utilizó el Informe de inspección y la Resolución pronunciada por el DACo.[43] Contestó que fundamentó su opinión en las fotografías provistas por la señora FERNANDINI LAMBOY.[44] Afirmó que, según las fotografías entregadas, el ventanal consistía de cuatro ventanas que son las que pudo evaluar, mas no tuvo la oportunidad de ver la instalación de las restantes instaladas pues no le proporcionaron las fotos.[45] Indicó que al visitar la residencia, ya las ventanas nuevas habían sido instaladas; sacó fotos pero no las incluyó en su informe; y no fue parte de su análisis la cantidad de agua que entró en el apartamento, por lo que tomó como referencia las fotografías y la información que le brindó la señora FERNANDINI

---

[33] *Íd.*, pág. 188, líneas 6-19; pág. 190, líneas 9-21.

[34] Transcripción de la Prueba Oral (TPO) de la audiencia celebrada el 12 de julio de 2021, pág. 191, líneas 1-6.

[35] *Íd.*, pág. 201, líneas 1-17.

[36] *Íd.*, pág. 213, líneas

[37] Transcripción de la Prueba Oral (TPO) de la audiencia celebrada el 13 de julio de 2021, pág. 7, líneas 12-24.

[38] *Íd.*, pág. 13, líneas 9-18.

[39] *Íd.*, pág. 15, líneas 1-5; pág. 17, líneas 1-7.

[40] *Íd.*, pág. 17, líneas 7-13.

[41] Transcripción de la Prueba Oral (TPO) de la audiencia celebrada el 13 de julio de 2021, pág. 18, líneas 10-24; pág. 19, líneas 1-2.

[42] *Íd.*, pág. 20, líneas 8-24.

[43] *Íd.*, pág. 23, líneas 1-13.

[44] *Íd.*, pág. 25, líneas 14-20

[45] Transcripción de la Prueba Oral (TPO) de la audiencia celebrada el 13 de julio de 2021, pág. 27, líneas 1-17; pág. 29, líneas 16-24; pág. 30, líneas 1-4.

**LAMBOY**.[46] Aseveró que no evaluó las ventanas instaladas por **PUERTO RICO ONE**, y solo lo hizo por fotografía.[47]

### Nelly E. Rodríguez Suárez

Manifestó que es la gerente de *quality control* de **PUERTO RICO ONE ALUMINUM** y su función es verificar el producto cuando va a ser entregado al cliente.[48] Señaló que la señora **FERNANDINI LAMBOY** visitó su negocio en julio del año 2016, y se le vendió dieciséis (16) ventanas, una puerta *sliding door* y una puerta de al frente.[49] Expuso que al momento de la instalación de los productos, la señora **FERNANDINI LAMBOY** no permitió que se culminara el mismo, los empleados se disgustaron y no se terminó la instalación.[50] Reveló que para el proceso de DACo, ella fue a la inspección con el inspector de DACo y observó que no se había terminado la instalación, tal y como le informaron sus empleados, como empresa, estaban dispuestos a culminar la instalación de las ventanas.[51] Informó que, de las dieciséis (16) ventanas, a las que no se le terminó la instalación fueron las que se llevó el viento provocado por el huracán María.[52] Aseguró que nunca, en diez (10) años, ha tenido problema con la manufactura de sus ventanas de seguridad y del edificio donde vive la señora **FERNANDINI LAMBOY**, todos los apartamentos tenían instaladas sus ventanas y ninguna había fallado.[53]

En el contrainterrogatorio, dijo que no estuvo presente en la instalación de las ventanas y **PUERTO RICO ONE** no contaba con licencia de contratista expedida por el DACo, no obstante, hacían uso de contratistas independientes.[54]

En el redirecto, planteó que, en el proceso ante el DACo, y antes del huracán María, se le ofreció a la señora **FERNANDINI LAMBOY** corregir los desperfectos de las ventanas, pero esta no aceptó.[55]

### Doel Banch Zayas

Ratificó que es ingeniero civil graduado sin licencia del Colegio de ingenieros de Puerto Rico, contratista y trabaja como recurso en inspecciones tanto para aseguradoras como para ajustadores públicos.[56] Desplegó que el método que utiliza para hacer este tipo de reclamación es: primero, establecer el alcance de los daños midiendo las áreas afectadas y la labor que hay que realizar y luego se disponen los costos de los daños.[57] Fue cualificado como perito ajustador.[58] Enunció que cuando visitó la residencia de la señora **FERNANDINI LAMBOY**, la entrevistó y observó el mobiliario en excelente estado, la mayoría son en "cartón prensado" sin

---

[46] Transcripción de la Prueba Oral (TPO) de la audiencia celebrada el 13 de julio de 2021, pág. 33, líneas 6-19; pág. 34 1-10; pág. 35, líneas 1-3-4.

[47] *Íd.*, pág. 41, líneas 21-24; pág. 42, líneas 2-17.

[48] *Íd.*, pág. 56, líneas 1-12.

[49] *Íd.*, pág. 57, líneas 3-20.

[50] Transcripción de la Prueba Oral (TPO) de la audiencia celebrada el 13 de julio de 2021, pág. 58, líneas 11-19.

[51] *Íd.*, pág. 61, líneas 2-18.

[52] *Íd.*, pág. 62, líneas 9-24.

[53] *Íd.*, pág. 67, líneas 1-3, 11-24; pág. 68, líneas 1-10.

[54] Transcripción de la Prueba Oral (TPO) de la audiencia celebrada el 13 de julio de 2021, pág. 76, líneas 6-24.

[55] *Íd.*, pág. 85, líneas 15-24; pág. 86, líneas 1, 14-22; pág. 87, líneas 2-5.

[56] *Íd.*, pág. 115, líneas 11-24.

[57] *Íd.*, pág. 119, líneas 12-24.

[58] Transcripción de la Prueba Oral (TPO) de la audiencia celebrada el 13 de julio de 2021, pág. 125, líneas 17-18.

humedad.[59] Testificó que en la cocina no había presencia de humedad alguna; la puerta del "closet" del cuarto de las ventanas que se había llevado el viento estaba en perfectas condiciones sin marcas de oxidación y de entrada de agua significativa; el abanico de techo no tenía ningún daño; algunos de los muebles tenían presencia de humedad pero no daño significativo; y estimó aproximadamente $5,000.00 por los daños.[60]

En el contrainterrogatorio, aludió que su informe fue preparado 28 meses después del paso del huracán María, el 25 de febrero de 2020; vio el Informe y la Resolución del DACo, el informe pericial del Dr. Baigés, y, basado en eso, realizó su informe.[61] Al ser cuestionado sobre el informe, y sobre algunas notas que expresaban que algunos muebles de la residencia eran preexistentes al momento del Huracán (cuando estos se habían adquirido con posterioridad al incidente), el señor Banch Zayas expresó que la señora **FERNANDINI LAMBOY** fue la que le ofreció la información y en base a eso, realizó su informe.[62]

Escuchados los testimonios, el 25 de noviembre de 2022, se dispuso la *Sentencia* declarando ha lugar la *Demanda* y condenando a **PUERTO RICO ONE** al pago de $76,688.00 por daños y perjuicios causados por su negligencia.

En discrepancia, el 13 de diciembre de 2022, **PUERTO RICO ONE** presentó *Solicitud de Reconsideración*.[63] El 19 de diciembre de 2022, mediante *Resolución* se declaró no ha lugar a la petitoria de reconsideración.[64]

Inconforme con ese proceder, el 19 de enero de 2023, **PUERTO RICO ONE** recurrió ante este Tribunal de Apelaciones mediante un recurso de *Apelación*. El día 31 de mayo de 2023, en el caso KLAN202300061, se pronunció *Sentencia* mediante la cual se confirmó el fallo en cuanto a la determinación sobre *negligencia* de **PUERTO RICO ONE**. De igual manera, se revocó y dejó sin efecto la concesión de las partidas por concepto de daños materiales, gastos de prestamistas y daños mentales. En estas circunstancias, se devolvió el caso para efectuar una *evaluación,* según la prueba que obra en el expediente. En lo relativo a los daños mentales, requirió incluir un análisis de conformidad al caso *Santiago Montañez v. Fresenius Medical*.[65]

---

[59] *Íd.*, pág. 129, líneas 2-18.
[60] Transcripción de la Prueba Oral (TPO) de la audiencia celebrada el 13 de julio de 2021, pág. 129, líneas 19-23; pág. 131, líneas 5-17; pág. 132, líneas 2-14; pág. 134, líneas 1-8.
[61] *Íd.*, pág. 136, líneas 16-22; pág. 137, líneas 4-12.
[62] *Íd.*, pág. 141, líneas 1-8; pág. 143, líneas 9-22; pág. 145, líneas 11-20.
[63] Apéndice de la *Apelación*, págs. 581-586.
[64] *Íd.*, pág. 590.
[65] 195 DPR 476 (2016).

A posteriori, y en cumplimiento con lo anterior, el 13 de mayo de 2024, se prescribió la *Sentencia Enmendada* apelada. En esta, detalló las sumas otorgadas en concepto de daños materiales, intereses del préstamo de *SBA* y angustias mentales. Los montos se desglosan de la siguiente manera:

| DAÑOS MATERIALES | CUANTÍA |
|---|---|
| Paneles de madera | $225.00 |
| Aire Acondicionado e Instalación | $637.00 |
| Tormenteras | $3,000.00[66] |
| Muebles de la sala | $721.41 |
| Juego de Comedor | $992.36 |
| Abanico de pedestal | $44.58 |
| "Vanity" baño visitas | $705.80 |
| Entrega "vanity" baño visitas | $80.00 |
| Juego de Cuarto | $1,050.00 |
| Materiales pintura | $104.39 |
| Compra de materiales pintura | $71.19 |
| Mattress + entrega | $587.00 |
| Compra de lámpara balcón | $22.00 |
| Compra de efectos personales | $100.05 |
| Compra de zapatos | $34.42 |
| Compra de televisor | $323.14 |
| Compra de "rack" del televisor | $56.73 |
| Compra de cartera | $78.04 |
| Compra de cartera | $55.74 |
| Compra artículos del hogar (toallas) | $74.68 |
| Compra de toallas | $26.08 |
| Compra de cortinas y alfombras | $115.86 |
| Compra de sábanas y toallas | $57.94 |
| Compra de sábanas y toallas | $21.17 |
| Compra de sábanas y toallas | $37.90 |
| Compra de ropa | $96.27 |
| Puertas de aluminio | $2,726.80 |
| Estimado FEMA | $250.00 |
| Screens de las ventanas | $802.00 |
| Puertas y ventanas | $3,273.13[67] |
| Instalación de puertas y ventanas | $439.31 |
| **TOTAL**: | **$13,810.02** |

| PRÉSTAMO SBA | CUANTÍA |
|---|---|
| Intereses | **$13,188.00** |

| ANGUSTIAS MENTALES Y DAÑOS EMOCIONALES | CUANTÍA |
|---|---|
| Fórmula utilizada por el tribunal según el caso *Santiago Montañez v. Fresenius Medical*, *supra*.<br>La cantidad guía utilizada ($25,000.00) es de un caso similar resuelto por el Tribunal de Apelaciones en el año **2019**: *Vázquez Dávila v. AAA y otros*, KLAN201701210 cons. con KLAN201701211. | |
| Índice de precios al consumidor al 2019: **119.891**<br>Valor adquisitivo del dólar: 119.891 dividido entre **100=$1.198** redondeado a **$1.20** | $40,540.54 |

---

[66] Esta partida fue eliminada, toda vez que se corroboró que no existían previo a la instalación de las ventanas y al paso del Huracán María.

[67] Inicialmente esta partida ascendía a $10,150.46, a la cual se le restó la cuantía otorgada por DACo ($6,438.02), quedando un balance de $3,273.13.

| Se multiplicó **$25,000.00** por **$1.20** para un total de **$30,000.00**. Se dividió **$30,000.00** entre el valor adquisitivo del dólar para febrero del año 2024 (**0.74**) para un total de **$40,540.54**.[68] | |

Insatisfecho, el 30 de mayo de 2024, **PUERTO RICO ONE** presentó *Solicitud de Reconsideración*.[69] Algunos días después, el 5 de junio de 2024, se expidió *Resolución* declarando no ha lugar al petitorio de reconsideración.[70]

Ante ello, y aun en desavenencia, el 8 de julio de 2024, **PUERTO RICO ONE** acudió ante este foro revisor mediante *Apelación* señalando el(los) siguiente(s) error(es):

> Erró el Honorable Tribunal de Primera Instancia, abusó de su discreción y cometió error manifiesto en la apreciación de la prueba documental y testimonial presentada.
>
> Erró el Honorable Tribunal de Primera Instancia al descartar la aplicabilidad de la doctrina de cosa juzgada y sus vertientes de impedimento colateral por Sentencia y fraccionamiento de causa.
>
> Erró el Honorable Tribunal de Primera Instancia al ordenar el cobro de costas y honorarios por prueba pericial que resultó innecesaria para la evaluación de los hechos y la aplicación del derecho sobre la controversia de marras.

El 10 de julio de 2024, intimamos *Resolución* concediendo un término de treinta (30) días para presentar alegato en oposición. Al día de hoy, la señora **FERNANDINI LAMBOY** no ha comparecido.

Evaluado concienzudamente el expediente del caso, habiéndole dado la debida consideración a la transcripción de la prueba oral (TPO) y contando con el beneficio de la comparecencia de **PUERTO RICO ONE,** nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

### - II -

#### - A - *LA RESPONSABILIDAD CIVIL EXTRACONTRACTUAL*

---

[68] Se utilizó el valor adquisitivo del dólar para febrero del año 2024, toda vez que era la estadística más reciente al momento de emitir la *Sentencia* en mayo del año 2024.
[69] Apéndice de la *Apelación*, págs. 645-650.
[70] *Íd.*, pág. 651.

Para la fecha de los hechos de este caso, el Código Civil de Puerto Rico vigente era el de 1930.[71] En ese sentido, el Artículo 1802 disponía que el que por acción u omisión cause un daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado.[72] Para poder reclamar daños y perjuicios bajo este artículo, la parte demandante debe acreditar la presencia de estos tres (3) requisitos esenciales: (i) la existencia de un daño real; (ii) el nexo causal entre daño sufrido y la acción u omisión de la parte demandada; y (iii) el acto u omisión es culposo o negligente.[73]

De hecho, al enfocar el concepto de la culpa o la negligencia, el Alto Foro lo ha definido como: "la falta del debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias".[74] Necesariamente, es la omisión la cual genera responsabilidad civil extracontractual siempre y cuando tal [inadvertencia] constituya una conducta antijurídica imputable.[75] Sustancialmente, para determinar si se incurrió o no en responsabilidad civil por omisión, el Máximo Foro ha dictado que deben considerarse los siguientes elementos:[76]

(i)      la existencia o inexistencia de un deber jurídico de actuar por parte del alegado causante del daño; y

(ii)     en caso de haberse realizado el acto omitido se hubiera evitado el daño.

Entretanto, el ordenamiento jurídico implanta que el deber de indemnizar presupone la existencia de un *nexo causal*.[77] En esa línea, se ha instituido que en Puerto Rico rige la doctrina de la *causalidad adecuada*.[78] La

---

[71] Refiérase al Artículo 1815 del Código Civil de Puerto Rico de 2020, 31 LPRA § 11720, el cual dispone, en parte, que "[l]a responsabilidad extracontractual, tanto en su extensión como su naturaleza, se determina por la ley vigente en el momento en que ocurrió el acto u omisión que da lugar a dicha responsabilidad. [...]".

[72] 31 LPRA ant. § 5141.

[73] *Pérez et al. v. Lares Medical et al.*, 207 DPR 965, 976 (2021); *López v. Porrata Doria*, 169 DPR 135, 150 (2006).

[74] *López v. Porrata Doria, supra*; *Toro Aponte v. E.L.A.*, 142 DPR 464, 473 (1997).

[75] *Ruiz Mattei v. Commercial Equipment*, 2024 TSPR 68; 213 __ DPR (2024); *Hernández Vélez v. Televicentro*, 168 DPR 803, 812 (2006); *Arroyo López v. E.L.A.*, 126 DPR 682, 686 (1990).

[76] *Hernández Vélez v. Televicentro, supra*; *Soc. Gananciales v. G. Padín Co., Inc.*, 117 DPR 94, 106 (1986).

[77] *Estremera v. Inmobiliaria Rac, Inc.*, 109 DPR 852, 856 (1980).

[78] *Pérez et al. v. Lares Medical et al., supra*, pág. 977; *López v. Porrata Doria, supra*, pág. 151.

doctrina de *causalidad adecuada* admite que "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general".[79] En palabras sencillas, la cuestión se limita a determinar si la ocurrencia del daño era de esperarse en el curso normal de un suceso o si, por el contrario, este queda fuera del cálculo.[80]

## - B - *VALORACIÓN DE LOS DAÑOS*

En lo concerniente a la valoración de los daños, el tribunal apelativo no debe intervenir con la estimación que efectúa el tribunal primario, salvo cuando la cantidad concedida resulte [absurdamente] baja o exageradamente alta.[81] Sucintamente, la base para esa valoración lógicamente dependerá de la prueba aportada, cuya apreciación por el foro primario está cobijada por una presunción de corrección.[82] La ausencia de proporcionalidad entre los daños probados y la indemnización adjudicada es base para variar, en apelación, un resarcimiento. Es decir, si la indemnización se ajusta a la provista en casos anteriores similares, ajustada al valor presente, se presume razonable y no debe ser alterada en la apelación.[83]

Ciertamente, el Alto Foro ha reconocido que la tarea judicial de estimar y valorar los daños resulta ser difícil y angustiosa, pues no existe un sistema de computación que permita llegar a un resultado exacto con el cual todas las partes queden completamente complacidas y satisfechas.[84] Como resultado, los foros revisores deberán guardar deferencia a las valorizaciones de daños que haga el tribunal de primera instancia, puesto que son éstos los que poseen contacto directo con la prueba testifical presentada y, por ende, están en mejor posición para emitir un juicio sobre la valorización de daños.[85]

---

[79] *Íd.*; *López v. Porrata Doria, supra*, págs. 151-152.
[80] *Rivera Jiménez v. Garrido Co. Inc.*, 134 DPR 840, 852 (1993).
[81] *Sucn. Mena Pamias et al. v. Melendez et al.*, 212 DPR 758 (2023); *Santiago Montañez v. Fresenius Medical*, 195 DPR 476 (2016); *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 203 (2013).
[82] Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V; *Blás v. Hosp. Guadalupe*, 146 DPR 267, 339 (1998).
[83] *Sucn. Mena Pamias et al. v. Melendez et al., supra*, págs. 770–771; *Herrera, Rivera v. S.L.G. Ramírez-Vicéns*, 179 DPR 774 (2010).
[84] *Santiago Montañez, et al. v. Fresenius Medical Care, et al., supra*; *Herrera, Rivera v. S.L.G. Ramírez-Vicéns, supra*.
[85] *Íd.*

Precisamente, al computar los daños en un caso, el juzgador debe hacerlo sobre una estricta base de correspondencia con la prueba, procurando que la indemnización no se convierta en una industria y no lesione la economía. Debido a eso, el deber de los jueces tiene el propósito de conservar el sentido remediador y no punitivo, que permea al conferir la compensación en concepto de daños y perjuicios.[86] En cuanto a la prueba documental, el tribunal revisor se encuentra en igual posición que el tribunal primario y está facultado para apreciar la prueba basándose en su propio criterio.[87]

Aún así, quien solicita la modificación del monto conferido tiene el peso de la prueba.[88] En consecuencia, la parte que suplica la alteración de la indemnización otorgada por el foro de instancia deberá demostrar que, en efecto, existen circunstancias que así lo justifican. Por consiguiente, la mera alegación sobre la improcedencia de las compensaciones es insuficiente para que los foros apelativos modifiquen las mismas.

Por lo tanto, sólo cuando se acredite que la cuantificación de los daños es irrazonable es que procede la revisión por los foros apelativos.[89] Ello implica que el derecho a ser indemnizado no puede ser derrotado meramente porque en ocasiones el cómputo en cuestión pueda resultar un tanto especulativo. Lo medular es que el resarcimiento adjudicado esté basado en la prueba y que, a su vez, se mantenga el sentido remediador que persigue el ordenamiento [jurídico].[90] Del mismo modo, el Tribunal Supremo reiteró que, a pesar de que la tarea de valoración de daños puede generar múltiples criterios, tal tarea debe residir, dentro de lo posible, en el juicio del juzgador de los hechos, enmarcado dentro de un análisis de razonabilidad. De no

---

[86] *Semidey et al. v. Fcia. Belmonte et al.*, 211 DPR 222 (2023); *SLG v. F.W. Woolworth & Co.*, 143 DPR 76, pág. 81 (1997); *Rivera v. Tiendas Pitusa, Inc.*, 148 DPR 695 (1999).
[87] *Dye-Tex P.R., Inc. v. Royal Ins. Co., PR*, 150 DPR 658, 662 (2000).
[88] *Meléndez Vega v. El Vocero PR, supra*; *Rivera v. Tiendas Pitusa, Inc., supra*, pág. 700.
[89] *Albino v. Ángel Martínez, Inc.*, 171 DPR 457 (2007).
[90] *Rivera v. Tiendas Pitusa, Inc., supra*.

existir algún error manifiesto, parcialidad o prejuicio en tal apreciación, no corresponde nuestra intervención.[91]

### - C - *DOCTRINA DE LA COSA JUZGADA Y SUS VERTIENTES*

El Artículo 1204 del Código Civil de 1930 instaura que:[92]
> … para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquel en que esta sea invocada, concurra la más **perfecta identidad** entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron. …[93]

La doctrina de *cosa juzgada* se define como lo ya resuelto por fallo firme de un juez o tribunal competente y que lleva en si la firmeza de irrevocabilidad.[94] En definitiva, su objetivo es ponerles fin a las disputas luego de adjudicados de forma categórica por los tribunales. Pues, se garantiza la certidumbre y seguridad de los derechos declarados mediante una resolución judicial para evitar gastos adicionales al Estado.[95]

El tratadista Manresa señala: "…el fundamento de la cosa juzgada no está en una pretensión de infalibilidad en el juzgador, ni menos en el intento de ocultar sus errores, sino que se encuentra en la esencia misma de la resolución judicial, que no merecería tal nombre ni tendría fuerza y resultado, si no se fortaleciera de ese modo. Es, por tanto, una consecuencia directa de la autoridad necesaria al fallo, y en un orden eminentemente práctico tiene el fundamento indiscutible de que, sin esa fuerza atribuida a lo juzgado, los pleitos nunca tendrían fin".[96] Incluso, jurisprudencialmente la han catalogado como "una regla de justicia fundamental y sustancial, rodeada de interés público".[97]

---

[91] *Íd.*
[92] 31 LPRA § 3343. Resaltamos que este artículo fue eliminado de las disposiciones del *Código Civil de Puerto Rico de 2020* manteniendo los efectos de la doctrina expresamente en el Artículo 577 sobre disputa de paternidad o maternidad, 31 LPRA § 7131, y el Artículo 1500 sobre los efectos de la cosa juzgada en la transacción, 31 LPRA § 10644.
[93] (énfasis nuestro).
[94] 31 LPRA § 3343.
[95] *Presidential v. Transcaribe*, 186 DPR 263, 273-275 (2012); *Parrilla v. Rodríguez*, 163 DPR 263, 268 (2004); *Worldwide Food Dis., Inc. v. Colón, et al*, 133 DPR 827, 833-834 (1993).
[96] Refiérase a Manresa, *Comentarios al Código Civil Español*, Tomo VIII, vol. 2, Madrid, Ed. 1967, pág. 279.
[97] *Pagán Hernández v. U.P.R.*, 107 DPR 720, 732 (1978).

Es decir, esta doctrina es valiosa y necesaria para la sana administración de la justicia. Por un lado, vela por el interés gubernamental de finalizar los pleitos. Por otro lado, se interesa en no someter a los ciudadanos a las molestias de tener que litigar dos (2) veces una misma cosa. Pese a, **su aplicación no procede de forma inflexible y automática**, cuando hacerlo derrotaría los fines de la justicia o consideraciones de orden público.[98] El Tribunal ha descartado la aplicación de esta doctrina en múltiples instancias para evitar una injusticia o en ocasión de atender un caso permeado de consideraciones de orden público.[99]

Al profundizar en el elemento de la identidad de cosas significa que el segundo pleito se refiere al mismo asunto que versó el primero, aunque las cosas hayan sufrido disminución o alteración. La cosa es el objeto o materia sobre la cual se ejercita la acción. La identidad del objeto ocurre, cuando el juez al hacer una determinación se expone a contradecir el derecho afirmado en una decisión anterior.[100]

De otro lado, la identidad de causas es el fundamento capital, el origen de las acciones o excepciones planteadas y resueltas. La identidad de causas no debe confundirse con los medios de prueba ni con los fundamentos legales de las pretensiones deducidas por las partes. La causa es el motivo que tuvo la parte demandante para pedir. La identidad de causa existe cuando los hechos y los fundamentos de las peticiones son idénticos en lo que afecta a la cuestión planteada. Al determinar, si existe identidad de causa de acción debemos preguntarnos si ambas reclamaciones se basan en la misma transacción o núcleo de hechos.[101]

---

[98] (énfasis nuestro).
[99] *Presidential v. Transcaribe, supra,* pág. 274; *Parrilla v. Rodríguez, supra; Meléndez v. García,* 158 DPR 77, 92 (2002); *Pagán Hernández v. U.P.R., supra; Feliciano Ruiz v. Alfonso Develop. Corp.,* 96 DPR 108, 114 (1968).
[100] *Presidential v. Transcaribe, supra,* pág. 274; *Rodríguez Rodríguez v. Colberg Comas,* 131 DPR 212, 220 (1992).
[101] *Presidential v. Transcaribe, supra,* pág. 275; *A & P Gen. Contractors v. Asoc. Caná,* 110 DPR 753, 765 (1981).

Sobre ese aspecto, la identidad de los litigantes y la calidad en que lo fueron, el propio Artículo 1204, *supra*, dispone que:

> Se entiende que hay identidad de personas siempre que los litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o este unido a ellos por vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones entre los que tienen derecho a exigirlas u obligación de satisfacerlas.[102]

Por otra parte, el *impedimento colateral* es una modalidad de cosa juzgada. Al igual que la *doctrina de cosa juzgada* su propósito es promover la economía procesal y judicial, proteger a los litigantes contra lo que representa defenderse o probar sus reclamaciones en repetidas ocasiones tratándose de la misma controversia, evitar litigios innecesarios y decisiones inconsistentes. Se distingue de la *doctrina de cosa juzgada* porque no es necesario que se dé el requisito de identidad de causas. De modo que, la razón de pedir que se presente en la causa de acción no tiene que ser la misma que se presentó en la demanda anterior.[103]

Efectivamente, la doctrina de *impedimento colateral* "surte efecto cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y se determina mediante sentencia válida y final y tal determinación es concluyente en un segundo pleito entre las mismas partes", aunque estén envueltas causas de acción distintas.[104] A pesar de ello, no procede su interposición cuando la parte contra la cual se inserta no ha tenido la oportunidad de litigar previamente el asunto y no ha resuelto ser la parte perdidosa en el litigio anterior.

En fin, es menester señalar que la doctrina de *impedimento colateral* por sentencia no aplica a asuntos que pudieron ser litigados y determinados en el primer caso y no lo fueron. Normalmente, su aplicación se limitará a aquellas cuestiones que, en efecto, fueron litigadas y adjudicadas.[105]

---

[102] *Presidential v. Transcaribe, supra*, pág. 276.
[103] *P.R. Wire Prod. v. C. Crespo & Assoc*., 175 DPR 139, 152 (2008).
[104] *Presidential v. Transcaribe, supra*, pág. 277; *P.R. Wire Prod. v. C. Crespo & Assoc., supra*.
[105] *Íd.*

## - D - *HONORARIOS Y COSTAS*

Las *costas* son aquellos gastos necesariamente incurridos en la tramitación de un pleito o procedimiento que un litigante debe reembolsar a otro por mandato de ley o por determinación discrecional del juez.[106] La Regla 44.1(a) de las de Procedimiento Civil de 2009 instituye la concesión de *costas*:

> (a) *Su concesión.* Las costas se concederán a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación o revisión, excepto en aquellos casos en que se disponga lo contrario por ley o por estas reglas. Las costas que podrá conceder un tribunal son los gastos en que se incurra necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte debe reembolsar a la otra.[107]

Esta norma procesal tiene dos (2) propósitos, a saber: 1) restituir lo que una parte perdió por hacer valer su derecho al ser obligada a litigar, y 2) penalizar la litigación inmeritoria, temeraria o viciosa.[108] Una vez reclamadas, la imposición de *costas* a favor de la parte victoriosa es mandatorio.[109] Su concesión no opera de forma automática, dado que tiene que presentarse oportunamente un memorando de *costas* en el que se precisen los gastos incurridos.[110]

La Regla 44.1 fija en sus incisos (b) y (c), el trámite requerido tanto para implorar la concesión de *costas* como para oponerse a estas. Dicha Regla apresta que:

> (b) *Cómo se concederán.* La parte que reclame el pago de costas presentará al tribunal y notificará a la parte contraria, dentro del término de diez (10) días contados a partir del archivo en autos de copia de la notificación de la sentencia, una relación o memorándum de todas las partidas de gastos y desembolsos necesarios incurridos durante la tramitación del pleito y procedimiento. [...] Si no hubiese impugnación, el tribunal aprobará el memorándum de costas y podrá eliminar cualquier partida que considere improcedente, luego de conceder a la parte solicitante la oportunidad de justificarlas. Cualquier parte que no esté conforme con las costas reclamadas podrá impugnarlas en todo o en parte, dentro del término de diez (10) días contados a partir de aquel en que se le notifique el memorándum de costas. [...]

---

[106] *ELA v. El Ojo de Agua Development,* 205 DPR 502, 527 (2020).
[107] 32 LPRA Ap. V, R. 44.1.
[108] *Rosario Domínguez et als. v. ELA et al.,* 198 DPR 197, 211 (2017).
[109] *Maderas Tratadas v. Sun Alliance et al.,* 185 DPR 880, 934 (2012).
[110] *Rosario Domínguez et als. v. ELA et al., supra,* pág. 212.

Reiteradamente nuestro Tribunal Supremo ha explicado que el término del que dispone la parte victoriosa para presentar su memorando de costas es de naturaleza jurisdiccional.[111] Así surge de la Regla 68.2 de las de Procedimiento Civil de 2009, *supra,* donde específicamente se decreta que el tribunal "no podrá prorrogar o reducir el plazo para actuar bajo las disposiciones de las Reglas 43.1, 44.1, 47, 48.2, 48.4, 49.2 y 52.2, salvo lo dispuesto en éstas bajo las condiciones en ellas prescritas". Por lo tanto, se trata de un plazo improrrogable, fatal e insubsanable, y su cumplimiento tardío priva de autoridad al tribunal para considerar y aprobar las costas reclamadas.[112] Emana del lenguaje de la precitada Regla 68.2 que el término de diez (10) días para oponerse a un memorando de costas también es jurisdiccional e improrrogable.[113]

Asimismo, no todos los gastos del litigio son recobrables como *costas*.[114] El concepto de *costas* procesales exige una interpretación restrictiva, pues se promueve el interés de garantizar el mayor acceso a los litigantes de manera económica.[115] "Quedan sujetos a las disposiciones del mencionado precepto procesal únicamente aquellos expendios que se consideren necesarios en la gestión judicial. Indistintamente corresponde al tribunal, en el marco de su discreción, evaluar la razonabilidad de éstos".[116] "Su razonabilidad se entenderá dentro de la realidad económica de Puerto Rico, y en cuanto a los gastos personales, además, se tendrá en cuenta la condición económica de las personas concernidas (testigos y litigantes). No se aprobarán gastos innecesarios, superfluos o extravagantes".[117]

---

[111] *Íd., supra,* pág. 213.
[112] *Rosario Domínguez v. ELA, supra,* pág. 217.
[113] *ELA v. El Ojo de Agua Development, Inc., supra,* pág. 528. Véase, además, *Rosario Domínguez v. ELA, supra,* escolio núm. 19 (citando a Cuevas Segarra, *Tratado de derecho procesal civil,* 2da ed., San Juan, Pubs. JTS, 2011, T. IV y V, págs. 1299 y 1907).
[114] *Maderas Tratadas v. Sun Alliance et al., supra,* pág. 935.
[115] *Íd.*
[116] *Íd., Garriga, Jr. v. Tribunal Superior,* 88 DPR 245, 256 (1963).
[117] *Íd.,* pág. 257.

Aunque el Máximo Foro ha reconocido que los gastos de un perito nombrado por el tribunal están comprendidos en el concepto de *costas* recobrables, en el caso particular de los expertos contratados por las partes el reembolso opera por vía de excepción, y se concederá únicamente cuando ello esté plenamente justificado.[118] Al evaluar si procede o no el pago de los honorarios de peritos contratados por las partes, el tribunal "**[tiene] que evaluar su naturaleza y utilidad a la luz de los hechos particulares del caso ante su consideración, teniendo la parte que los reclama el deber de demostrar que el testimonio pericial presentado era necesario para que prevaleciera su teoría**".[119] Lo anterior implica que:

> [D]eben tomarse en cuenta las credenciales que ostenta el experto designado para rendir una opinión sobre una materia en particular. También corresponde examinar el alcance de su testimonio, para de este modo estar en posición de aquilatar su utilidad en beneficio de la postura procesal de la parte que resulte victoriosa. Cónsono con lo anterior, se descartará en la medida en que éste resulte irrelevante, inmaterial o innecesario en la tramitación del caso del que solicita el rembolso.[120]

La jurisprudencia apareja que la parte victoriosa también tiene derecho a que se le reembolsen como *costas* los gastos incurridos en la transportación (pasajes aéreos) de testigos cuando el testimonio que se ofreció fue de vital importancia para que el tribunal pudiera formular un dictamen judicial informado.[121] "El gasto incurrido en obtener deposiciones es recobrable si son necesarias, aunque no se usen en las vistas del caso".[122] Por el contrario, no son incluibles como *costas* los gastos ordinarios de las oficinas de los abogados de los reclamantes tales como sellos de correo, materiales de oficina y transportación de los abogados durante una inspección ocular.[123] Tampoco son incluibles como *costas* los gastos de

---

[118] *Maderas Tratadas v. Sun Alliance et al., supra,* pág. 935.
[119] *Rodríguez Cancel v. AEE,* 116 DPR 443, 461 (1985) (énfasis suplido).
[120] *Maderas Tratadas v. Sun Alliance et al., supra,* pág. 936.
[121] *Nudelman v. Ferrer Bolívar,* 107 DPR 495, 518 (1978).
[122] *Pereira v. I.B.E.C.,* 95 DPR 28, 78 (1967).
[123] *Íd.*

transcripciones de récords de vistas cuando tales transcripciones se solicitan por ser convenientes pero no necesarias para los reclamantes.[124]

Finalmente, la Regla 44.1(c) de las de Procedimiento Civil de 2009 aprovisiona para la concesión de *costas* en la etapa apelativa. La Regla determina que la parte a cuyo favor un tribunal apelativo dicte sentencia deberá presentar el correspondiente memorando de *costas* en la sala del tribunal de instancia que inicialmente decidió el caso, dentro del término jurisdiccional de diez (10) días contados a partir de la devolución del mandato y conforme a los criterios concretados en el inciso (b). Asimismo, la oposición al memorando deberá formularse en la forma prescrita en la Regla 44.1(b), esto es, dentro del término jurisdiccional de diez (10) días contados desde que haya sido notificado el memorando de la etapa apelativa.

### - III -

**PUERTO RICO ONE** cuestiona la determinación del foro de instancia, pues aduce que el tribunal apelado erró: (i) al abusar de su discreción y cometió error manifiesto en la apreciación de la prueba documental y testimonial presentada; (ii) al descartar la aplicabilidad de la doctrina de cosa juzgada y sus vertientes de impedimento colateral por Sentencia y fraccionamiento de causa; y (iii) al ordenar el cobro de costas y honorarios por prueba pericial que resultó innecesaria para la evaluación de los hechos y la aplicación del derecho sobre la controversia de marras. Argumenta que, para la mayoría de las partidas concedidas no se presentó evidencia suficiente para concluir que los daños materiales alegados habían sido causados como consecuencia del agua que entró al apartamento por el área de las ventanas del cuarto master. Asegura que imputarle responsabilidad alguna por la decisión de la señora **FERNANDINI LAMBOY** de comprometer su crédito solicitando un préstamo ante la inexistente urgencia de remodelar y rediseñar su propiedad resultaría en un ejercicio abusivo del derecho.

---

[124] *Íd.*

Hemos escudriñado minuciosamente este expediente a los fines de resolver la controversia. Veamos. En la *Demanda*, la señora FERNANDINI LAMBOY reclamó la cantidad $100,000.00 por concepto de los actos negligentes y culposos de PUERTO RICO ONE así como una suma no menor de $20,000.00 por los sufrimientos y angustias mentales. Sus alegaciones estaban dirigidas a recobrar los agravios sufridos por el agua de la lluvia y viento que penetró su apartamento, tras el paso del huracán María, por las cuatro (4) ventanas del cuatro master de su apartamento que fueron instaladas por PUERTO RICO ONE (huecos dejados por las ventanas instaladas negligentemente).

PUERTO RICO ONE puntea que la *Sentencia Enmendada* se distancia "inexplicablemente" de la norma jurídica aplicable en lo concerniente a los daños. Añadió que, ante tal realidad fáctica, incurrió en error manifiesto. El foro primario desglosó la valoración de los daños de la siguiente manera:

i. **$13,810.02** como indemnización por concepto de daños materiales;
ii. **$13,188.00** como indemnización por concepto de intereses del préstamo SBA;
iii. **$40,540.54** como indemnización por concepto de angustias mentales y daños morales; y
iv. el pago de las costas y de los intereses legales aplicables.

Esta itemización suma la totalidad de $67,538.56, la cual PUERTO RICO ONE debía sufragar por la totalidad de los daños causados a la señora FERNANDINI LAMBOY en relación a la instalación defectuosa de las ventanas.

Si bien es cierto que debemos reconocerle deferencia a la valoración de daños y perjuicios efectuada por el tribunal de instancia en cuanto a su apreciación de la prueba testimonial, tal valoración de daños descansa, en parte, en elementos subjetivos y de especulación que dependen, en cierto grado, de un sentido de justicia y de conciencia humana.[125] A tales efectos, el tribunal deberá evaluar aquellos casos comparables que sean utilizados como

---

[125] *Sucn. Mena Pamias et al. v. Melendez et al., supra*, pág. 769.

punto de partida para el proceso de determinar las sumas a concederse por concepto de los daños sufridos.[126]

Según el análisis del tribunal, los daños materiales consistieron en:

| | |
|---|---|
| Paneles de madera | $225.00 |
| Aire Acondicionado e Instalación | $637.00 |
| Muebles de la sala | $721.41 |
| Juego de Comedor | $992.36 |
| Abanico de pedestal | $44.58 |
| "Vanity" baño visitas | $705.80 |
| Entrega "vanity" baño visitas | $80.00 |
| Juego de Cuarto | $1,050.00 |
| Materiales pintura | $104.39 |
| Compra de materiales pintura | $71.19 |
| Mattress + entrega | $547.00 + $40.00 |
| Compra de lámpara balcón | $22.00 |
| Compra de ropa | $75.08 |
| Compra de ropa | $24.97 |
| Compra de zapatos y blusa | $34.42 |
| Compra de televisor | $323.14 |
| Compra de "rack" del televisor | $55.73 |
| Compra de cartera | $78.04 |
| Compra de cartera | $55.74 |
| Compra zapatos y toallas | $74.68 |
| Compra de toallas | $26.08 |
| Compra de cortinas y alfombras de baño | $115.86 |
| Compra de sábanas y toallas | $57.94 |
| Compra de sábanas | $21.17 |
| Compra de sábanas | $37.90 |
| Compra de ropa y blusas | $96.27 |
| Puertas de aluminio | $2,726.80 |
| Estimado FEMA | $250.00 |
| Screens de las ventanas | $802.00 |
| Puertas y ventanas | $3,273.13[127] |
| Instalación puertas y ventanas | $439.31 |
| Total | $13,810.02 |

Habida cuenta de la *Transcripción de la Prueba Oral* junto con la documentación admitida en evidencia, deducimos que hay algunas cantidades que deben modificarse, y otras que no proceden por falta de evidencia: fotografía, documentación o testimonio que refleje y/o sustente su adjudicación. Ante el hecho de que se trata de la concesión de varios componentes u objetos, iremos sobre cada uno de ellos.

*Juego de comedor-* la señora **FERNANDINI LAMBOY** presentó un recibo del gasto de $992.36; esta se limitó a expresar que se trataba de una factura

---

[126] *Íd., supra*, pág. 770.
[127] Inicialmente esta partida ascendía a $10,150.46, a la cual se le restó la cuantía otorgada por DACO ($6,438.02), quedando un balance de $3,273.13.

en la cual se indicaba lo que compró y la razón de la adquisición fue porque se le mojaron las patas de cartón prensado y se dañó.[128]

*Mueble de la sala (sofa)-* la señora **FERNANDINI LAMBOY** presentó un recibo por $721.41. Testificó que se trataba de un mueble modular que tuvo un costo de $597.00 más el IVU para un total de $721.40.[129]

*Abanico de pedestal-* el reclamo de la señora **FERNANDINI LAMBOY** totaliza $44.58.[130] Manifestó que se trataba de un abanico de pedestal que se mojó y se dañó.

*"Vanity" del baño de visita-* junto a la instalación alcanza la cantidad de $785.80. La señora **FERNANDINI LAMBOY** se circunscribió a declarar que se trataba del baño de visitas, y el mueble llegaba hasta el piso, era cartón prensado, se mojó y se esponjó.[131]

*Lámpara ubicada en el balcón de la residencia-* con un costo de $22.86.[132]

*Gastos por vestimenta, calzado y carteras-* la señora **FERNANDINI LAMBOY** sostuvo en el juicio que sus pertenencias en el cuarto master "se mojaron y se dañaron".[133] Las referidas cantidades ascienden a $75.08, $24.97, $34.42, $78.04, $55.74 y $96.27 ($364.52).

---

[128] Transcripción de la Prueba Oral (TPO) de la audiencia celebrada el 12 de julio de 2021, pág. 93, líneas 11-24; pág. 94. No hay fotografía del área del comedor.

[129] *Íd.*, pág. 92, líneas 8-11; pág. 93, líneas 1-3. Véase primera fotografía de la página 4 del área de la sala en la cual no se observa el sofá.

[130] Véase inciso 22 de las Determinaciones de Hechos de la *Resolución* emitida 18 de mayo de 2018 por el DACo. Apéndice de la *Apelación*, pág. 40.

[131] *Íd.*, pág. 99, líneas 7-19; pág. 100, líneas 1-9, 19-22; pág. 101, líneas 12-24.

[132] *Íd.*, pág. 109, líneas 11-12.

[133] Transcripción de la Prueba Oral (TPO) de la audiencia celebrada el 12 de julio de 2021, pág. 111, líneas 2-12; pág. 112, líneas 9-16, 23-24; pág. 113, líneas 2, 9-12, 23-24; pág. 114, líneas 2-11; pág. 117, líneas 11-17; pág. 118, líneas 9-17; pág. 119, líneas 11-18. Véase segunda foto de la página 4. Nótese que las razones que ofreció la señora **FERNANDINI LAMBOY** se redujo a las siguientes expresiones:

> P: ¿Qué le pasó a su ropa? ¿Qué le pasó a su ropa, testigo?
> R: Se mojó. Se mojó y se dañó.
> [...]
> P: Okey. ¿Y por qué se compró esos zapatos, doña Wanda?
> R: Porque los que tenía se dañaron con el agua. Se mojaron. Estaban en el piso, se mojaron.
> P: Eh...
> R: Sustituyendo los que tenía.
> [...]
> P: ¿Y por qué compró esa cartera?
> R: Porque la que tenía se me había dañado. Se mojó.
>      ...

*Toallas, cortinas de baño y alfombras del baño-* la señora **FERNANDINI LAMBOY** alegó haber incurrido en las cuantías de $74.68[134], $115.86[135], $57.94[136]. Hay dos (2) fotografías en las cuales se ilustra una cómoda color crema mojada cuya última gaveta se rompió y contenía toallas.[137]

*Puertas de aluminio de los cuartos-* la señora **FERNANDINI LAMBOY** relató que cambió las puertas interiores del apartamento. La factura muestra que se adquirieron cuatro (4) puertas de aluminio blanco con cristal de leche.[138] De un examen detallado de las fotografías admitidas en evidencia, se puede apreciar que las puertas de la residencia de la señora **FERNANDINI LAMBOY** eran de madera o cartón prensado no eran aluminio. Tampoco que estuviesen esponjadas y/o rotas.[139]

*"Screens" de las ventanas-* la señora **FERNANDINI LAMBOY** enunció que los *screens* no formaban parte del contenido del apartamento con anterioridad a los hechos que dieron lugar a su reclamación.[140]

---

P: ¿Y esa porqué la compró, doña Wanda?
R: Tenía... Se me habían dañado cuando entró el agua.
[...]
P: ¿Y porqué realizó esa compra?
R: Fueron cosas... en sustitución de cosas que se me habían dañado con el agua.
[...]
P: ¿Y las razones?
R: Se dañó... Ropa que se me había dañado cuando entró agua y se me manchó. Para sustituirla.

[134] Apéndice de la *Apelación*, pág. 438.

[135] El recibo provisto por la señora **FERNANDINI LAMBOY** contiene los siguientes artículos: (1) *Towels* por $19.99; (2) *Bath Rugs* por $14.99; (3) *Bath Shop* por $5.99; (4) *Bath Shop* por $5.99; (5) *Bath Shop* por $19.99; (6) *Bath Shop* por $5.99; (7) *Bath Shop* por $12.99; (8) *Bath Shop* por $9.99; (9) *Bath Shop* por $7.99. Por solo una corresponder a la partida de toallas, es la que procede. Así las cosas, se reduce la cantidad de $115.86 a $19.99. Apéndice de la *Apelación*, pág. 442.

[136] De esta cuantía en particular, surge del recibo que la compra consistió de cuatro (4) artículos: (1) *Sheet Cases* - $16.99; (2) *PB Towels* - $10.99; (3) *PB Towels* - $13.99; (4) PB *Cookware* - $9.99. La correspondiente a *PB Cookware* se elimina, toda vez que no se establece en que consiste la misma. Así las cosas, se modifica la cuantía de $57.94 a $47.95. Apéndice de la *Apelación*, págs. 443-444.

[137] Véase la segunda fotografía de la página 8 y la primera de la página 9.

[138] Apéndice de la *Apelación*, pág. 452.

[139] Véase la segunda fotografía de la página 8 y la primera de la página 9. Apéndice de la *Apelación*, págs. 487-498.

[140] Transcripción de la Prueba Oral (TPO) de la audiencia celebrada el 12 de julio de 2021, pág. 50, líneas 9-17; pág. 130, líneas 1-9.
"P: ¿Y qué refleja esa foto? ¿Qué usted ve ahí?
R: Agua también y pues cosas que se mojaron y se dañaron. Un screen de los que tenían las ventanas."
[...]
"P: ¿Cuándo lo había visto?

No existe evidencia, tales como fotografías, facturas, recibos u otros, que nos permita determinar razonablemente los bienes, incluyendo mobiliario u otros, que se perdieron en septiembre de 2017 y cuál era su valor. La señora **FERNANDINI LAMBOY** decidió deshacerse voluntariamente de cierto mobiliario u otros bienes muebles, sin auscultar otra solución o remedio como su reparación, y no porque fueron una pérdida ocasionada por el desprendimiento de las ventanas del cuarto master y el agua que entró a su residencia. Esto es, no dilucidó la razón o motivo por la cual tuvo que comprar algunos de los muebles nuevos, ni cuales fueron los daños que sufrieron y si se inhabilitaron para su uso. Por ello, no nos parece prudente inferir que se presentó evidencia suficiente para probar todos los daños especiales alegados.

Habida cuenta de lo anterior, discernimos que **no** se desfiló prueba o evidencia suficiente para justificar la concesión de las siguientes partidas: (a) mueble de la sala (sofá): $721.41 ; (b) juego de comedor: $992.36; (c) *"vanity"* del baño visita y entrega: $785.80; (f) cortinas y alfombras de baño: $95.87; (g) cuatro (4) puertas de aluminio: $2,726.80; y (h) *"screens"*: $802.00. A esos efectos, se deben eliminar estas cantidades que totaliza: **$6,124.24**. Se mantienen los demás importes concedidos. Por tanto: $13,810.02 - $6,124.24 = **$7,685.78** a compensar por daños materiales.

En su *Sentencia Enmendada*, al momento de exponer la cuantía asignada a la señora **FERNANDINI LAMBOY** por concepto de angustias mentales, se concluyó en base a los testimonios vertidos que:

> De la **prueba creída** por este Tribunal surgió que el apartamento de la demandante sufrió severos daños; esta perdió equipos, enseres, muebles, ropa y efectos personales. La demandante tuvo que refugiarse por un periodo de seis (6) meses con una prima suya, hasta que el apartamento quedara en condiciones de ser

---

R: Cuando contraté a una persona para que me hiciera unos escrines [sic] para las ventanas.
P: ¿Y cuál fue el... cuál fue el costo de esos escrines [sic]?
R: Ochocientos dos dólares ($802.00).
P: ¿Y la razón para... para esa compra?
R: Porque las ventanas que me habían instalado no... no me incluyeron las... los escrines [sic]."

habitable. Esta tuvo que invertir tiempo y esfuerzo para remediar la situación. De igual forma, la demandante se vio afectada emocionalmente por la pérdida temporera de su hogar y todo el trámite que tuvo que seguir para rehabilitarlo. La demandante **declaró sobre la profunda tristeza que sentía cada vez que acudía a su vivienda y la encontraba en aquellas condiciones**. Indudablemente, la demandante sufrió considerables angustias y daños emocionales que ameritan ser compensados.[141]

Sabido es que "en el sano ejercicio de la discreción, el tribunal debe permitir a un propietario recobrar indemnización no solo por la pérdida de uso de la propiedad, sino además por otras lesiones como alteraciones de ánimo y enfermedades físicas".[142] A este tenor, nuestro Máximo Foro ha reiterado que: "al valuar y mensurar los daños el juzgador debe hacerlo en estricta correlación con la prueba presentada, procurando mantener un sentido remediador sin aproximarse al elemento punitivo".[143] En esa misma dirección, una reclamación por daños morales "e**s imprescindible probar sufrimientos y angustias mentales profundas y no bastaría una pena pasajera como base de la acción**".[144] En otras palabras, el reclamante debe proveer evidencia que sustente realmente que quedó afectado en su salud, bienestar y felicidad. [145]

Para valorar los daños emocionales del caso ante nuestra consideración, el foro de instancia utilizó el caso resuelto por un panel hermano de este Tribunal de Apelaciones: *Vázquez Dávila v. AAA y otros*, *supra*. En ese caso, la *negligencia* de la *AAA* ocasionó que aguas negras inundaran la residencia de la reclamante. Como resultado de ese suceso, tuvieron que desalojar su residencia por el espacio de un (1) año. Entre los daños reclamados se encontraban: arreglo de gabinetes; reemplazo de lozas; pérdida de bienes muebles y enseres; raspado y pintura de la residencia;

---

[141] Apéndice de la *Apelación*, págs. 642–643. (énfasis nuestro).
[142] *Rivera v. S.L.G. Díaz*, 165 DPR 408 (2005).
[143] *Íd.*, pág. 432.
[144] *Íd.*, pág. 433. (énfasis nuestro). El ordenamiento jurídico implanta que, para determinar el *valor razonable* de tales daños morales es preciso que el reclamante, en cada caso, aporte los factores de evidencia necesarios para evaluarlos justa y adecuadamente, probando que no se trata de una simple pena pasajera, sino que, en alguna medida apreciable, el reclamante realmente quedó afectado en su salud, bienestar y felicidad. Véase *MOA v. ELA*, 100 DPR 573, 587 (1972).
[145] *Blás v. Hosp. Guadalupe*, *supra*.

daños especiales por obras de arte; y, daños morales. En cuanto a la cuantía de daños morales, el Tribunal de Apelaciones no intervino con la apreciación de la prueba formada por el foro de instancia, toda vez que no medió prejuicio, pasión o parcialidad. Sin embargo, el tracto procesal del caso refleja que el Tribunal de Primera Instancia concedió $25,000.00 a una de las partes por concepto de angustias mentales y daños morales, cifra que se tomó como base para adjudicar las angustias mentales de la señora **FERNANDINI LAMBOY**.

En el referido caso *Vázquez Dávila v. AAA y otros*, resuelto el 22 de mayo de 2019, el valor adquisitivo del dólar era de $0.83. Para realizar el ajuste correspondiente, la fórmula correcta consiste en multiplicar la compensación concedida ($25,000.00) por dicho valor adquisitivo del dólar ($0.83) y luego dividir el resultado ($20,750.00) entre $0.73, que es el poder adquisitivo del dólar al momento en que se dictó la *Sentencia Enmendada* apelada, esto es, el 13 de mayo de 2024. Aplicado correctamente este método, el monto ajustado asciende a **$28,424.65**.

Es importante destacar que el foro *a quo*, al efectuar su cálculo, recurre a un valor del dólar incorrecto, utilizando $1.20 en lugar de $0.83.[146] Dicha sustitución altera sustancialmente el resultado y genera una cifra mucho más alta, a saber, $40,540.54. Así, el error en el índice utilizado causa que el ajuste no refleje la equivalencia real entre ambas fechas, afectando la cuantía que finalmente le fue adjudicada a la señora **FERNANDINI LAMBOY**.

En consonancia con lo anterior, concluimos que los $40,540.54 no concuerda a los valores correspondientes al momento en que se dictó la *Sentencia Enmendada*, sino a un error matemático al utilizar el poder adquisitivo del dólar erróneo. Consecuentemente, juzgamos adecuado ajustar dicha cuantía a la cantidad de **$28,424.65**, tomando en consideración el caso similar utilizado y las particularidades del presente. Obsérvese que la

---

[146] Según el portal del Departamento del Trabajo y Recursos Humanos, el índice de precios al consumidor para mayo de 2019 era: 119.891. El cálculo correcto para obtener el valor adquisitivo del dólar para el año 2019 es el siguiente: 100/119.891= 0.83 (índice del precio al consumidor para el año 2019)= 0.83..

disminución no proviene de un fundamento en el vacío, sino más bien a que el foro de instancia utilizó un poder adquisitivo del dólar incorrecto, lo cual resulta en una diferencia del cálculo comparativo final que efectuó. Al mismo tiempo, consideramos que de la *transcripción de la prueba oral (tpo)* no surge prueba suficiente que demuestre que la señora FERNANDINI LAMBOY se vio afectada de manera muy prolongada, privándola de su salud, bienestar y felicidad. Debemos tener presente que, al mensurar los daños debe existir una estricta correlación con la prueba presentada sin aproximarse a un elemento punitivo.[147]

En virtud de ello, consideramos que la cuantía concedida por el tribunal primario a la señora FERNANDINI LAMBOY en cuanto a los daños materiales debe ser ajustada, totalizando **$7,685.78**. En cambio, la cifra otorgada por conceptos de angustias mentales y daños morales debe ajustarse o disminuirse por el error matemático incurrido por el Tribunal de Primera Instancia, Sala Superior de Bayamón, ajustándose a **$28,424.65**.

En otro orden de cosas, la imposición de cuantía sobre intereses legales del préstamo de SBA obtenido por la señora FERNANDINI LAMBOY, ascendiente a $13,188.00 estimamos que no es razonable y PUERTO RICO ONE no responde dicha cantidad. Como resultado, se deja sin efecto.

En lo pertinente al pago de las *costas*, el 15 de mayo de 2024, la señora FERNANDINI LAMBOY presentó su *Memorando de Costas*. Al día de hoy, no ha sido adjudicada. Por lo que, carecemos de *jurisdicción* para atender este asunto.

- IV -

Por los fundamentos antes expuestos, ***modificamos*** la determinación judicial a los efectos de ajustar las partidas relacionadas a los daños materiales (**$7,685.78**) y los daños morales (**$28,424.65**); ***dejamos sin efecto*** la concesión de la cuantía sobre intereses del préstamo SBA; y, así

---

[147] *Rivera v. S.L.G. Díaz, supra,* pág. 432.

modificada; ***confirmamos*** la *Sentencia Enmendada* promulgada el 13 de mayo de 2024, por el Tribunal de Primera Instancia, Sala Superior de Bayamón.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

La Jueza Cintrón Cintrón concurre con el resultado sin opinión escrita.

El Juez Campos Pérez está conforme con la corrección a la cuantía concedida por concepto de angustias mentales y daños morales, así como con la eliminación del pago de los intereses del préstamo SBA. Empero, disiente con respecto a las modificaciones puntuales a determinadas partidas correspondientes a los daños materiales. Emitió las siguientes expresiones:

> Respetuosamente estimo que la función de esta curia como tribunal revisor no es sustituir nuestro criterio por el del magistrado de la primera instancia judicial. En la causa del título, ante la interrogante de "si algo se salvó en su casa", la señora Fernandini Lamboy declaró palmariamente: "Muy pocas cosas. Las cosas que no estaban en el piso. Algunas se mojaron un poco menos, más. Pero fue muy poco".[148] Además, el tribunal *a quo* justipreció la prueba documental admitida que evidenció la compra de los artículos modificados o suprimidos. Como se conoce, los tribunales apelativos no debemos intervenir con la valoración de daños que realiza el foro primario, salvo cuando la cuantía concedida resulte ridículamente baja o exageradamente alta. *Santiago Montañez v. Fresenius Medical*, 195 DPR 476, 490 (2016); *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 203 (2013). En ausencia de dicho parámetro, es menester conferir deferencia a las determinaciones del foro sentenciador, quien ha evaluado las circunstancias particulares del caso. *Mena Pamias v. Jiménez Meléndez*, 212 DPR 758, 770 (2023); *Herrera, Rivera v. S.L.G. Ramírez-Vicéns*, 179 DPR 774, 786 (2010).

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones

---

[148] Transcripción de la Prueba Oral, 12 de julio de 2001, a la pág. 54, líneas 16-22.